# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Douglas Ahle, Andrew Jordan and
William Wiseman, individually and            Civil File 0:09-cv-00042-ADM/LIB
on behalf of others similarly situated,

                        Plaintiffs,

v.

Veracity Research Co.,

                        Defendant.

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS

Through the parties' motion, declaration, and exhibits attached hereto, the above-named Plaintiffs, individually and on behalf of 133 additional opt-in class members, (collectively, "Plaintiffs") and Defendant Veracity Research Company, LLC ("Defendant"), seek final approval of their settlement in this collective action for overtime compensation, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., and dismissal of this action in its entirety with prejudice. The parties respectfully submit that the terms of settlement are fair, reasonable, and resolve a *bona fide* dispute between the parties with respect to liability and damages.

## DISCUSSION

## I. HISTORY AND PROCEDURAL STATUS OF THIS LAWSUIT

On January 8, 2009, Plaintiffs Douglas Ahle, Andy Jordan, and William Wiseman, all former investigators of Defendant, filed this collective action on their own behalf and on behalf of the proposed class of investigators alleging Defendant violated the FLSA by, among other things, failing to pay appropriate overtime compensation. Defendant answered Plaintiffs' Complaint on March 2, 2009, denying Plaintiffs' allegations, and asserted nine counterclaims against some or all of the three named Plaintiffs and one opt-in Plaintiff.[1] The Court conditionally certified the collective action under the FLSA on September 23, 2009. There are currently 136 Plaintiffs included in this lawsuit.

The parties engaged in considerable discovery before the June 1, 2010 discovery deadline. Defendant took approximately 17 Plaintiff depositions all around the country, obtained written discovery from each Plaintiff currently participating in the case, and produced thousands of documents. (Desai Decl. at ¶ 3.) Plaintiffs also received written discovery from Defendant, produced documents and took a total of five depositions of Defendant's witnesses. (Id.) The parties, moreover, exchanged expert reports and took the depositions of such designated experts. (Id.)

Further, there has been significant motion practice, most recently cross-motions for summary judgment and Defendant's motion to decertify the collective class. On

---

[1] Plaintiffs filed a motion to dismiss all of Defendant's counterclaims on April 8, 2009 for lack of subject-matter jurisdiction. On July 28, 2009, the Court granted in part and denied in part Plaintiffs' motion, allowing Defendant to assert intentional and negligent misrepresentation claims against Plaintiff Ahle; those aspects of breach of duty of loyalty and honesty claims, as well as forfeiture or disgorgement claims based on allegations that Ahle falsified his time and mileage reports and failed to perform required duties while being compensated by Veracity; and those aspects of unjust enrichment based on similar allegations that Jordan and Abrams falsified time reports and failed to perform required duties while being compensated by Veracity.

August 25, 2010, the Court denied Defendant's motion to decertify the collective class, and also held that Plaintiffs are not exempt under the Administrative, Outside Sales, or Motor Carrier exemptions.  (ECF No. 281.)   The Court further held that certain travel time was not compensable, the fluctuating workweek method of calculating damages applied, and fact issues exist that preclude summary judgment on liquidated damages and on whether Defendant's violation of the FLSA was willful.  (Id.)   The Court set a trial date of January 31, 2011 for the adjudication of the remaining issues in the case, such as damages, liquidated damages and willfulness.  (See ECF No. 304.)

On February 8, 2011, the parties filed the Stipulation of Settlement for preliminary approval.  (ECF No. 316.)   The Court granted preliminary approval of the Stipulation of Settlement, approved the proposed Notice of Settlement and Claim Form to the FLSA Opt-in Class, appointed Nichols Kaster, PLLP as the claims administrator, and set the final approval hearing on May 19, 2011 at 9:00 a.m.  (ECF No. 317.)

## II.   HISTORY OF SETTLEMENT

The parties have engaged in arm's length negotiations directed towards settlement of the claims asserted by Plaintiffs and counterclaims asserted by Defendant.  The parties participated in three mediation conferences throughout the litigation—on March 3, 2010, in Orlando, FL with Mr. Jay Cohen from JAMS, and on December 14, 2010 and January 20, 2011 with Magistrate Judge Brisbois.  It was not until the last mediation conference that the parties, with the assistance of Magistrate Judge Brisbois, reached a settlement as to all claims by Plaintiffs and the counterclaims asserted by Defendant.  (See ECF No. 314.)  On February 8, 2011, the parties filed the Stipulation of Settlement ("Stipulation")

3

with the Court, which includes each term of the settlement between the parties.  (ECF No. 316.)

### A. The Settlement Amount

Defendant will pay to Plaintiffs and Plaintiffs' Counsel a total payment of $300,000, which will be paid in four equal parts.  (ECF No. 316 at ¶ 12.1).  The payment structure is as follows:  (1) the first payment totaling $75,000, will be due and payable 30 days after the District Court grants final approval of the settlement; (2) within 180 days following the District Court's final approval of the settlement, Defendant shall make a second installment payment totaling $75,000; (3) within 365 days after the District Court's final approval of the settlement, Defendant shall make a third installment payment totaling $75,000; (4) within 545 days after the District Court's final approval of the  settlement, Defendant shall make the final installment payment totaling $75,000.  (Id.)  There will be no reversion.  (Id.)

### B. The Settlement Fund Allocation

The settlement allocations were based on the proportion of the damages each FLSA Opt-In Class member is owed based on overtime hour estimates, as compared to the total damages for all Plaintiffs, plus any applicable bonuses.  (ECF No. 316 at ¶ 16.1(a).)  Plaintiffs' Counsel's attorneys' fees, in the amount of $100,000, and costs, in the amount of $62,934 which includes an estimated $5,000 in costs to administer the settlement, was first removed from the total settlement amount of $300,000.  The parties agreed that a total of $3,200 will be allocated to Plaintiffs who were deposed, and an additional $1000 to Named Plaintiffs Ahle and Wiseman each in recognition of the their

4

time and effort in serving the class.[2]  (ECF No. 316 ¶ 16.1(a).)   Lastly, an additional

$5,000 was allocated to Plaintiff Szkutnicki in recognition for his FLSA retaliation claim

against Defendant.  After deducting the bonus payments, a final amount of $126,866 was

allocated among the Plaintiffs' "Settlement Fund." (Id.) The remaining funds were

allocated proportionally among all Plaintiffs, with a minimum allocation of $100.  (Id.)

### C. Settlement Allocation Distribution

In order to ensure a fair distribution of the settlement amount among the class

members, following final approval by the District Court, the parties have agreed that for

each member of the FLSA Opt-In Class who has timely returned a valid claim form and

signed the applicable release, Defendant will issue two checks through its payroll system.

(ECF No. 316 at ¶ 15.1.)  The first check will constitute one-half (50%) of the settlement

payment to participating class members and will be reported as wages for tax purposes

with each eligible Plaintiff receiving from Defendant an IRS Form W-2 for this portion of

the settlement payment.   (Id.) This first check will be paid using the first $75,000

payment Defendant is obligated to make.  (Id.)  Any balance that remains after Defendant

issues this first set of checks to all FLSA Opt-In Class members who timely returned a

valid claim form and signed the applicable release shall be paid to Plaintiffs' Counsel as a

portion of its attorneys' fees and costs.  (Id.)  Defendant shall withhold from payments to

Plaintiffs taxes and other sums the Plaintiff is required to pay by state or federal law.

Defendant shall pay the employer portion of the payroll taxes.  (Id.)

---

[2] Plaintiffs formally make this request to the Court in a later section of this Memorandum.

The second set of checks to Plaintiffs will be paid from the second $75,000 payment Defendant is obligated to pay, and will cover the remaining half (50%) of the settlement payment.  (Id.)  Such payment shall constitute payment for non-wage income, including but not limited to liquidated damages, and will be reported on an IRS Form 1099.  Any balance that remains after Defendant issues this second set of checks to all FLSA Opt-In Class members who timely returned a valid claim form and signed the applicable release shall be paid to Plaintiffs' Counsel as a portion of its attorneys' fees and costs.  (Id.)  The remainder of attorneys' fees and costs paid to Plaintiffs' Counsel shall be paid by Defendant from the third and fourth payments of $75,000.  (Id. at ¶ 15.2.)

Any Settlement Funds that are unclaimed for a period of 180 days after mailing of the settlement checks will be donated to the Shriner's Children's Hospitals and the Children of the Fallen Soldiers' Relief Fund on an equal basis.  (ECF No. 316 at ¶ 16.2.)

### D.  **Notice Procedure and Results of Participation in Settlement**

Plaintiffs' Counsel sent the Court approved Notice of Settlement and Claim Form to each of the 136 class members of the FLSA Opt-In Class via First Class regular United States' on February 11, 2011. (See ECF Nos. 316-2, 316-3.)  Class members were given 60 days to return valid claim forms.  (ECF No. 316 at ¶ 10.1)  Plaintiffs' Counsel received a total of 132 valid claim forms within the applicable period.  (Desai Decl. at ¶ 4.)  Plaintiffs' Counsel has made diligent efforts to obtain a timely response from each class member in response to the Notice.  (Id.)

### E.  **Release of Claims**

In consideration for the settlement payment from Defendant, the 132 Class members who return a valid Claim Form release the Releasees from all claims, demands, rights, liabilities, and causes of action known or unknown, for violation of any state or federal wage and hour laws, including the Fair Labor Standards Act, whether for economic damages, non-economic damages, restitution, penalties, liquidated damages, interest, attorneys' fees, or other damages of any kind based on the Fair Labor Standards Act or any other state or federal law, statute, or constitutional provision pertaining to wage and hour claims, arising out of, relating to, or in connection with his or her employment with Defendant.   The "Releasees" include Defendant, its current and former parents, subsidiaries, affiliates, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, shareholders, and attorneys and their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, and those plans' respective trustees and administrators.  (ECF No. 316 at ¶ 5.1.)

Named Plaintiffs Ahle and Wiseman and Plaintiff William Szkutnicki, in addition to the release described above, fully, finally, and generally release any and all claims, currently known, anticipated, or disclosed to them, and all those claims that are presently unknown, unanticipated, and undisclosed to them, arising out of or in connection with their employment with Defendant or the termination of that employment. (Id. at ¶ 5.2.) Named Plaintiffs Ahle and Wiseman agreed to the general release in consideration for both their settlement payments and a release on the counterclaims from Defendant. Plaintiff William Szkutnicki agreed to the general release in consideration for both his

7

settlement payments related to his wage and overtime claims, in addition to his retaliation claim against Defendant.

Defendant also releases Douglas Ahle, Andrew Jordan, and Jacqueline William Abrams from all claims, demands, rights, liabilities, and causes of action, whether for economic damages, non-economic damages, restitution, penalties, liquidated damages, interest, attorney's fees, or other damages of any kind based upon the counterclaims asserted against them by Defendant.  (Id. at 5.3.)

## III.   THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE PARTIES' CLAIMS AND DEFENSES

Court approval of FLSA settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by the named Plaintiffs and the opt-in class.  See Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). Under the FLSA, employees can only bargain, waive, or modify their recovery and rights in narrow circumstances.   Brask v. Heartland Auto. Servs., Inc., 06CV00011RHK/AJB, 2006 WL 2524212, at * 2 (D. Minn. Aug. 15, 2006) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).  In a private action between the employer and employee, a settlement falls within those narrow circumstances only if the parties agree on the terms, the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," and the settlement is entered as stipulated judgment. Lynn Food Stores, 679 F.2d at 1353, 1355.

In approving a settlement offer, the Court must give comprehensive consideration to all relevant factors and yet the settlement hearing must not be turned into a trial or a

8

rehearsal of the trial.  <u>Brask</u>, 2006 WL 2524212 at *2 (citing <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 462 (2d Cir. 1974)).[3]  The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses.  <u>Id.</u> (citing <u>Grinnell</u>, 495 F.2d at 455).  Other factors include: the complexity, expense and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  <u>Id.</u> (citing <u>Grinnell</u>, 495 F.2d at 463.)

### A.   <u>The Proposed Settlement is Fair and Reasonable</u>

The settlement was the product of an arms-length negotiations by experienced counsel, which had the effect of providing relief to the named Plaintiffs and opt-in class members, and eliminating the inherent risks both sides would bear if this complex litigation were to continue through resolution at trial.  The parties participated in two mediation sessions with Magistrate Judge Brisbois, and that mediation process ultimately allowed the parties to obtain the present resolution.  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  <u>See</u> <u>Lynn's Food Stores, Inc.</u>, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness); <u>see also</u> <u>In re</u>

---

[3] The <u>Grinnell</u> case concerns class action settlements under Fed. R. Civ. P.  23.  However, both the FLSA and Rule 23 require fair and reasonable settlements, thus the standards set forth are applicable.

BankAmerica Corp. Securities Litig., 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and awards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable.  First, the complexity, expense, and likely duration of the litigation weighs heavily in favor of finding that the settlement is fair and reasonable. Although the Court decided certain issues at summary judgment, the impending trial, on the issues of damages, liquidated damages and willfulness, would have been costly and time-consuming for the parties.  The time and effort involved in preparing the necessary pre-trial motions and submissions, preparing for trial otherwise, coordinating and paying for the travel of both sides' witnesses to Minneapolis to testify, and trying the case for several weeks would have resulted in significant fees and costs for the parties.  Further, both sides recognize an inherent risk in losing any of the issues that would have been tried.  Defendant's financial status was also a significant consideration in the amount for which the case settled.

Counsel for the parties, moreover, have gained a comprehensive knowledge of the facts and legal issues relating to the remaining claims and defenses and have ample evidence on which to base an informed assessment of the proposed settlement.  Plaintiffs' and Defendant's counsel believe the settlement is fair, reasonable and adequate.

"Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." In re BankAmerica, 210 F.R.D. at 702.

The reaction of the class also supports a finding that the settlement is fair and reasonable. Of the 136 Plaintiffs and opt-in Plaintiffs in the case, 132 returned valid claim forms and will participate in the settlement.[4] Accordingly, the settlement will include approximately 97% of the collective class.

**B.      A *Bona Fide* Dispute Between The Parties Exists**

Given the Court's determination at summary judgment, there is no question there exists a *bona fide* dispute between the parties. At trial, Plaintiffs recognize the possibility that minimal damages could have been awarded by the jury, and a potential risk of losing the issues of liquidated damages and willfulness. Along the same vein, Defendant recognizes the possibility of a jury verdict that could bankrupt the company. Counsel for the parties agree that either outcome was possible in this action.

Lastly, Plaintiffs' Counsel's attorneys' fees and costs are reasonable because Plaintiffs' Counsel secured a favorable result for Plaintiffs and the opt-in class members and bore a significant risk of nonpayment in this case if Defendant were to prevail at trial. Moreover, the issues here are complex, and the parties engaged in contentious litigation for over two years before they agreed upon a resolution. As a result, Plaintiffs' counsel expended a considerable amount of resources in motion practice, discovery, and litigating the case generally. (Desai Decl. at ¶ 5.) Based on a preliminary analysis on fees, Plaintiffs' counsel will be receiving approximately $600,000 less than its lodestar fee

---

[4] While no Plaintiff rejected the settlement, four did not respond or submit a claim form.

amount. (See id.)   Finally, class members in this case agreed to be represented by Plaintiffs' counsel on a contingency basis, and the fees and costs for attorneys' fees reflect the terms of that agreement.[5]   Plaintiffs' Counsel also requests $500 for costs associated with administering the settlement.[6]   (Desai Decl. at ¶ 7.)

## C. The Court Should Approve Recognition Payments to Named Plaintiffs Ahle and Wiseman, and Bonus Payments to 17 Plaintiff deponents

Courts have approved recognition or incentive payments if they are fair and reasonable.  See Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving a $10,000 incentive payment to two Named Plaintiffs, and $1,000 to each deponent in an FLSA and Rule 23 settlement because such payments were "not excessive, but . . . fair and reasonable under the circumstances.")   Here, the modest recognition payment of $1,000 each to Named Plaintiffs Ahle and Wiseman is fair and reasonable.   Without the valuable assistance and participation of Plaintiffs Ahle and Wiseman, this case would have never been initiated by Plaintiffs' counsel, and accordingly, each opt-in Plaintiff benefitted significantly from their contributions.   Both Plaintiffs, moreover, provided key information to Plaintiffs' Counsel and remained responsive and available throughout the litigation.   Significantly, the recognition

---

[5] If the Court deems it necessary as a condition to final approval, Plaintiffs' counsel can submit an itemized description of fees and costs for the Court's review.  Attached as Exhibit A is a summary of costs incurred by Plaintiffs' Counsel throughout the litigation. Plaintiffs' Counsel seeks a total of $57,934 in costs.

[6] The anticipated cost of administering the settlement was $5,000, however, Plaintiffs' Counsel has only incurred approximately $230 in administering the settlement to date. Plaintiffs' Counsel requests a total of $500 to complete the administration of the settlement.  The remaining $4500 will be reallocated to the 132 participating Plaintiffs evenly.  (Desai Decl. at ¶ 7.)

payments here are reasonable and appropriate given their modest size, and will not significantly reduce the amount of settlement funds available to other Plaintiffs.

Lastly, the 17 Plaintiffs who sat for their depositions furthered the case in immeasurable ways.  Plaintiffs won on liability at summary judgment partly based on their testimony.  The small payment of $200 each recognizes the deponents' contribution to the case, including preparation time, travel time to the deposition sites, and time appearing for their depositions.[7]  Lastly, the small bonus payments will not significantly reduce the Settlement Fund, and Defendant does not oppose the requested payments.

## <u>CONCLUSION</u>

This FLSA collective action settlement is a product of an arms-length negotiation between counsel and resolves a *bona fide* dispute between the parties.  The settlement is fair, reasonable and adequate, and provides collective class members with monetary relief for their claims.  For these reasons, and those set forth above, the Court should approve the parties' Settlement Agreement and dismiss this action consistent with what the parties have set forth herein.

---

[7] The Stipulation provides that the 16 Plaintiffs who were deposed would receive a bonus of $200, however, one deponent was inadvertently left out of the calculation.  (ECF No. 316 at ¶ 16.1(a).)  The total number of Plaintiff deponents was 17.  Accordingly, the parties have agreed that the one deponent will receive the $200 deposition bonus, subject to Court approval, which will be taken from the unclaimed settlement funds of the four opt-in Plaintiffs who did not return their claim forms.

Respectfully Submitted,

Dated:  May 12, 2011                    **NICHOLS KASTER, PLLP**


                                        s/Reena I. Desai
                                        Donald H. Nichols, MN Bar No. 78918X
                                        Paul J. Lukas, MN Bar No. 22084X
                                        Matthew H. Morgan, MN Bar No. 304657
                                        Reena I. Desai, MN Bar No. 0388311
                                        4600 IDS Center
                                        80 South Eighth Street
                                        Minneapolis, MN  55402
                                        Telephone (612) 256-3200
                                        Fax (612) 215-6870

                                        ATTORNEYS FOR PLAINTIFFS


                                        **FREDRIKSON & BYRON, P.A.**

                                        s/Joseph M. Sokolowski
                                        Joseph M. Sokolowski (#178366)
                                        Lindsay J. Zamzow (#0314705)
                                        Krista A.P. Hatcher (#0387825)
                                        200 South Sixth Street, Suite 4000
                                        Minneapolis, MN  55402
                                        (612) 492-7000

                                        ATTORNEYS FOR DEFENDANT
                                        VERACITY RESEARCH CO.